NO. 12-04-00324-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF J.T.                                     §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION

            Appellant J.T. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court ordered J.T. committed to Rusk State Hospital
for a period not to exceed ninety days. In one issue, J.T. asserts the evidence is legally and factually
insufficient to support that order. We affirm.
 
Background
            On September 24, 2004, an application for court-ordered temporary mental health services
was filed requesting the court commit J.T. to Rusk State Hospital for a period not to exceed ninety
days. The application was supported by a certificate of medical examination for mental illness,
prepared by a physician, Dr. Larry Hawkins, who had examined J.T. on September 23. Dr. Hawkins
diagnosed J.T. as suffering from Bipolar Disorder NOS. He found that J.T. is mentally ill and likely
to cause serious harm to herself. He also found that she is suffering severe and abnormal mental,
emotional or physical distress; is experiencing substantial mental or physical deterioration of her
ability to function independently; and is unable to make a rational and informed decision as to
whether or not to submit to treatment. 
            Dr. Hawkins reached these conclusions because, on or about September 23, J.T. said she took
nine extra Ativan the day before, over an entire day, because she was angry and frustrated at her
boyfriend. He explained that she says she has a “mood disorder” and has been unable to afford her
medications over the past two weeks, except for Ativan. She was angry, depressed, and irritated at
her boyfriend but denied any suicide attempt. Dr. Hawkins found that J.T. presents a substantial risk
of serious harm to herself or others if not immediately restrained, an opinion he based on J.T.’s
behavior. Dr. Hawkins formed this opinion because of what J.T. said as set out above and because
she took an overdose of Ativan.
            On October 1, 2004, J.T. was examined by Dr. Shirley Bailey who then also prepared a
certificate of medical examination for mental illness. Dr. Bailey diagnosed J.T. with Bipolar I and
indicated that J.T. is mentally ill and likely to cause serious harm to herself. The doctor also found
that J.T. is suffering severe and abnormal mental, emotional or physical distress; is experiencing
substantial mental or physical deterioration of her ability to function independently; and is unable
to make a rational and informed decision as to whether or not to submit to treatment. She based her
opinion on J.T.’s statements that she had a mood disorder and could not afford her medications,
except for Ativan, and that she was angry, depressed, and irritable with her boyfriend. Also, J.T.
stated that she took nine extra Ativan tablets over an entire day but denied that it was a suicide
attempt. Dr. Bailey is also of the opinion that J.T. presents a substantial risk of serious harm to
herself or others if not immediately restrained, which is demonstrated by J.T.’s behavior. She based
this opinion on the report that J.T. was angry and very frustrated at her boyfriend and that she took
an overdose of her Ativan tablets.
             Dr. Bailey testified at the hearing, explaining that J.T. is mentally ill, suffering from Bipolar
Disorder, and likely to cause harm to herself. She also testified that J.T. is suffering severe and
abnormal mental, emotional, or physical distress that makes her incapable of functioning
independently outside the hospital setting. Further, the doctor testified that J.T. is unable to make
a rational and informed decision as to whether or not to consent to treatment. Dr. Bailey based her
opinion on J.T.’s condition at the time of her admission. She explained that she is not sure if J.T.
took Ativan and J.T. said she did not attempt to take her own life. J.T. had stopped taking her
medications. Just prior to her admission to Rusk State Hospital, she was taken to the emergency
room, where it was determined that she had benzodiazopenes, which would have been Zanax, in her
system. J.T. had self-medicated with methamphetamines. The doctor explained that J.T. did not
have the right diagnosis code to receive services from her local MHMR and she could not afford her
medications. Dr. Bailey thought J.T. would need to stay in the hospital another two weeks if she is
cooperative and gets stabilized on her medications. Since her admission to the hospital, J.T. has
neither committed any overt acts to harm herself nor threatened to harm herself. Dr. Bailey’s
diagnosis was based on her personal examination of J.T., a thorough review of her history, and on
reasonable medical probability. The doctor stated that Rusk State Hospital is the least restrictive
available option for J.T. at this time. 
            On cross-examination, Dr. Bailey testified that J.T. is currently suffering from severe and
abnormal mental, emotional, or physical distress. J.T. is able to feed herself and dress herself
without assistance or prompting. She is not always able to take care of her personal hygiene without
assistance or prompting and needs someone to encourage her to bathe daily. The doctor stated that
J.T. appears somewhat unkempt. Dr. Bailey testified that J.T. has the capacity to know the inherent
dangers of a burning building and to take necessary safety precautions if found in such a
predicament. She agreed that, since J.T. consented to take the medication she is currently on, it is
fair to say she has the capacity to make a rational and informed decision whether or not to submit
to treatment. Dr. Bailey stated that her medication has not reached therapeutic levels yet and she
needs more mood stabilization. The doctor believes J.T. may need to be hospitalized for as long as
two weeks. She explained that, until her mood is more stabilized, there is a risk that J.T. could be
a danger to herself if returned to the community, although she could live safely in freedom with the
help of responsible and willing family members or friends. The doctor answered affirmatively when
asked if there could be a less restrictive environment, such as a halfway house, nursing home, rehab
center, or group home, that could render the same or similar type of supervision.
            On redirect examination, Dr. Bailey clarified that J.T. admitted to the doctors at the hospital
that she took nine extra Ativan prior to her admission and that she was also taking
methamphetamines. She could have caused serious harm to herself by doing so. The doctor agreed
that there is a difference between agreeing to take medication and being able to make a rational and
informed decision whether or not to submit to other types of medication. Dr. Bailey testified that
if J.T. were released from the hospital she might engage in unsafe practices such as taking
methamphetamines. 
            On recross examination, Dr. Bailey stated that the harm to self is based on J.T.’s mental
illness and there is a likelihood she would harm herself. She based that opinion on her observations
of J.T. in the hospital. She admitted that the nine extra Ativan would not cause serious harm. 
However, in response to a question by the court, Dr. Bailey explained that the extra Ativan, together
with methamphetamines, could cause serious harm. 
            The court also asked if J.T. could function independently in a less restrictive environment. 
Dr. Bailey responded that she would have to be in an environment where they would be able to take
care of her because she can become highly agitated and sometimes aggressive. Therefore, there is
not a less restrictive environment that is appropriate for J.T. at this time. When asked for
clarification on the issue of J.T.’s capacity to make a rational and informed decision whether or not
to submit to medication, Dr. Bailey explained that J.T. can make a rational decision that she needs
treatment, but her illness gets in the way of complying because of her psychosis and mood problems
that she continues to display. Her lack of compliance is a result of her mental illness.
            J.T. testified in her own behalf. She said she does not want to remain in Rusk State Hospital. 
She explained that her mother is sick and she wants to go home to her. She explained that until she
came to the hospital she worked for Texas Home Health, taking care of people. Both she and her
mom took care of shopping and chores in their home. She said she does not wish to harm herself
and she was not trying to commit suicide the night she came to the hospital. She explained that she
was aggravated throughout the day at an ex-boyfriend. She did not take a whole handful of pills. 
She took them periodically, every two to three hours. She said she got prescriptions for Lithium
from hospitals because MHMR would not get her Lithium for her. She then got the prescriptions
filled and would take the Lithium. She stated she has been on her medicine since she got out of the
hospital the first time. She has a doctor that she sees outside the hospital and she would continue
to do what he feels is in her best interest. The emergency room stopped giving her Lithium and
Ativan because she needed her blood levels checked and she could not afford to do that. She said
she has done everything she could to continue on her medications. 
            J.T. denied ever having put herself in harm’s way and stated she would not put herself in
harm’s way in the future. She explained that she wants to be on this earth and she has four children. 
She has friends and family who come and visit on a regular basis. She has a driver’s license and can
drive. She can return to her full-time job if released from the hospital. She had not previously
signed up for health insurance but would be willing to do that to help cover her expenses. She
explained that she can do everything for herself at home that is being done for her at the hospital. 
She is ready to go home and she needs to take care of her children. If the court were to order some
form of out-patient treatment, she would comply with the order.
            On cross-examination, J.T. said she last used methamphetamines about a month before. A
friend, whom she does not see anymore, gave them to her.
            Dr. Bailey was then recalled to the stand. She stated that she did not believe J.T. could have
the same or similar treatment through an out-patient program as at the hospital. The doctor believes
J.T. needs further hospitalization because of her depressive symptoms and her changes in mood. She
also stated that she did not think J.T. can be handled in her home by her mother. In response to a
question from the court, Dr. Bailey stated that there is no out-patient facility that would be
appropriate for J.T.
            The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that J.T. is mentally ill and that she is likely
to cause serious harm to herself. The court ordered J.T. committed to Rusk State Hospital for a
period not to exceed ninety days. 
 
Sufficiency of the Evidence
            In her sole issue, J.T. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. She asserts that the evidence merely shows, if anything, that she is
mentally ill and may be in need of hospitalization. She argues that the doctor contradicted herself
and her testimony does not support the imposition of a commitment. 
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 
            In addressing a factual sufficiency of the evidence challenge, we must consider all the
evidence in the record, both that in support of and contrary to the trial court’s findings. In re C.H.,
89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing. Id. at 25. We must determine 
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations. Id. We must consider whether disputed evidence is such that a
reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. In
re J.F.C., 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the
factfinder. In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Applicable Law
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness she is likely to cause serious harm
to herself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by her inability, except for reasons of indigence,
to provide for her basic needs, including food, clothing, health, or safety, and (iii) unable to make a
rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety
Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the evidence
must include expert testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient
or others, or the proposed patient’s distress and the deterioration of his ability to function. Tex.
Health & Safety Code Ann. § 574.034(d) (Vernon 2003).
 
Analysis
            The trial court found only that J.T. is mentally ill and likely to cause serious harm to herself
and therefore that is the focus of our analysis. The State provided expert testimony explaining that
J.T. is mentally ill and describing her behavior and statements. In his certificate of medical
examination, Dr. Hawkins explained that J.T. was angry, depressed, and irritated. She had been
unable to afford to buy her medications for the last two weeks, except for Ativan. She took nine extra
Ativan the day before admission to the hospital. Dr. Bailey repeated this information in her certificate
of medical examination. At the hearing, Dr. Bailey testified that she believed J.T. was likely to cause
serious harm to herself, a conclusion she based on J.T.’s condition at admission. There was testimony
that J.T. had not been taking all of her medications because she could not afford to purchase some. 
Further, she “self-medicated” with methamphetamines and took an overdose of a prescribed
medication. Dr. Bailey testified that this combination could cause serious harm to J.T. She also
explained that it is J.T.’s illness that makes her unable to comply with her treatment plan. This is
expert testimony of a recent overt act that tends to confirm the likelihood of serious harm to herself. 
The trial court could have disbelieved J.T.’s testimony that she had no desire to harm herself. See In
re J.F.C., 96 S.W.3d at 266. Alternatively, the trial court could have determined that a lack of intent
to harm herself does not, under these facts, affect the likelihood that she will cause serious harm to
herself.
            Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that J.T. is likely to cause
serious harm to herself. See In re J.F.C., 96 S.W.3d at 266. The evidence is legally sufficient to
support the trial court’s order. See id.
            In addressing J.T.’s factual sufficiency complaint, we consider the evidence, giving due
consideration to evidence the factfinder could reasonably have found to be clear and convincing. In
re C.H., 89 S.W.3d at 25. J.T. testified that she did not attempt suicide and does not want to harm
herself. She said she could take care of herself and would follow her doctor’s orders. The trial court
was entitled to disbelieve J.T.’s testimony and disregard evidence contrary to the State’s position. 
See id. at 27. Accordingly, in light of the entire record, the evidence that the trial court could not have
credited in favor of its findings is not so significant that it could not reasonably form a firm belief or
conviction that J.T. is mentally ill and is likely to cause serious harm to herself. See id. Thus, the
evidence is factually sufficient to support the trial court’s findings. Because we hold the evidence is
both legally and factually sufficient to support the trial court’s order, we overrule J.T.’s sole issue.
 
Disposition
            We affirm the trial court’s order of commitment for temporary inpatient mental health
services.
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
 
Opinion delivered June 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)